In re MARLA JEAN, INC., Debtor.

CENTRE ASSOCIATES, INC., Plaintiff,

v.

MARLA JEAN, INC., Defendant.

Bankruptcy No. 82–00003–S–11.
Adv. No. 82–0734–S.

United States Bankruptcy Court,
W.D. Missouri, S.D.

Dec. 15, 1982.

Gary T. Nelms, Springfield, Mo., for plaintiff.

Mark Fitzsimmons, Springfield, Mo., for debtor/defendant.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Debtor, Marla Jean, Inc., operated a clothing store, The Image, in the North Town Mall pursuant to a lease agreement entered into on May 11, 1979. Debtor vacated the premises on April 15, 1982 taking with her twelve mirrors, three chandeliers, three display window spotlights, a front counter, a lavatory cabinet, three doors, wall fixtures, brackets and rods, and carpeting.

Centre Associates, Inc., hereinafter Centre, the owner of North Town Mall, filed a Complaint for Reclamation on May 7, 1982 alleging that the items taken were fixtures and should be returned. Centre also alleged that Debtor breached the lease agreement in that she did not repair the premises upon her abandonment. Debtor answered denying Centre's claims. The hearing on the matter was held June 29, 1982 with Plaintiff's Suggestions filed the same day and Defendant's Suggestions filed July 7, 1982.

Centre Associates bases its claim on Art. VIII, § 8.1L of the lease which provides that Tenant will:

"At, or prior to the termination of the Lease: . . . remove such of Tenant's goods and effects as are not permanently affixed to the Leased Premises; . . . to repair any damage caused by such removal; and peaceably to yield up the Leased Premises and all . . . fixtures, furnishings, floor coverings and equipment which are permanently affixed to the Leased Premises, which shall thereupon become the property of Landlord without credit or compensation to Tenant whatsoever . . . "

They claim that Debtor's right to remove any of the items was limited by the fact that the freehold could not be injured and that since "substantial injury" to the freehold did occur, the items were, in fact, fixtures.

Debtor refers this Court to the continuing trend in the Courts toward favoring tenants' rights in the area of trade fixtures in that the intent to annex the fixtures to the property will not be found where the chattel can be removed without material injury to the realty. The evidence shows the following:

(1) The mirrors: Debtor bought these full-length mirrors and installed them in the store prior to its opening. They were not built in but were hung on the walls with adhesive and double-backed tape. Removal was effected by sawing through the tape which left some adhesive behind. However, Debtor claims that the adhesive can be removed with a putty knife leaving the walls undamaged. The mirrors are presently in use at the store's new location.

(2) The chandeliers: One of the three chandeliers was plugged into the wall, hung from a hook and did not require any internal wiring. The other two were screwed into the ceiling tile and wired as one would wire any normal ceiling light. The ceiling itself was not damaged upon their removal and only screw holes were left in the tile.

(3) The display spotlights: Debtor bought these herself. Although she doesn't know the exact method of their installation, she believes they were attached with screws and claims that their removal did not cause any damage. The spotlights are not being used at present but Debtor has plans to use them in the future.

(4) The sales counter: This counter was also purchased by Debtor. It is a freestanding unit which was not attached in any way to the floor or walls. Debtor is using it at her new location.

(5) The lavatory cabinet: This is a free-standing vanity sink which was purchased by the debtor and connected to the drain pipe and the cold water faucet. Debtor claims that no custom work was involved but that she did incur some plumbing expenses in order to hook up the unit. The cabinet has been installed in the new location.

(6) The doors: Debtor installed these in the North Town Mall location at her own expense. They were connected to the walls with hinge pins and were removed from the hinges which were left behind. The doors are standard-size, not custom-made, and are presently in storage.

(7) The wall fixtures: These are racks with brackets. The standard, into which the metal bracket is fitted, is screwed into the wall and the rods or shelves are supported by the bracket. Removal of the standard left holes the size of picture nail holes which are invisible from twelve feet away. These were originally bought by the store.

(8) The carpeting: This was wall-to-wall carpeting, paid for by the business. It was not glued to the floor itself but was stretched over wooden strips from which nails extruded. The wooden strips were left behind when the carpeting was removed.

At the hearing Plaintiff testified to the effect that the vacated store requires drywall work and repainting. Plaintiff admitted that paint would probably cover the marks left by the removal of the tape and adhesive, that a paint job normally lasts for three to five years and the shop was 2½ years old when Debtor moved out, and that a new tenant would most likely repaint the premises anyway. Debtor testified that a four inch hole in one of the walls was the result of the removal, by Sentry Systems, of a security system and that she spent in excess of $35,000 improving the store when she moved into it in 1979. She also testified that the walls were undamaged in that spackling would cover any holes in them.

■ "A fixture is an article of personal property which has been so annexed to the real estate that it is regarded as a part of the land..." *Marsh v. Spradling,* 537 S.W.2d 402, 404 (Mo.1976). Those articles which are annexed in furtherance of a trade or business are called trade fixtures and are usually removable by the tenant. *Stockton v. Tester,* 273 S.W.2d 783, 787 (Mo.App.1954); *Matz v. Miami Club Restaurant,* 127 S.W.2d 738, 741 (Mo.App.1939).

■ A distinction is drawn between those articles "placed in the building for the sole purpose of enabling the tenant to carry on his business" and those "so placed as to make *the building itself* peculiarly adapted and more usable for the type of business." The former may remain personalty which the tenant may remove. The latter becomes annexed to the realty and must be left behind. *Stockton,* supra at 787; *Matz,* supra at 741.

■ In cases where the dispute is between a landlord and a tenant desiring to remove trade fixtures installed on the land, the trend is to "favor the rights of the tenant." *Endler v. St. Bank and Trust Co. of Wellston,* 352 Mo. 961, 180 S.W.2d 596, 598 (1944). The *Endler* court noted that principles of public policy and the encouragement of trade and manufacturing lead to this favored status. *Id.* 180 S.W.2d at 598. See *In re Estate of Horton,* 606 S.W.2d 792, 795 (Mo.App.1980); 35 Am. Jur.2d, Fixtures, § 35, p. 727.

■ The determination of whether or not an article is a fixture is based upon a consideration of the elements of annexation, adaptation and intent of the annexor. *In re Estate of Horton,* supra at 795; *Marsh v. Spradling,* supra at 404. Particular emphasis is placed on the third element, the intent of the annexor at the time of the annexation to effectuate a permanent annexation. *Leawood Nat'l Bank v. City Nat'l Bank & T. Co.,* 474 S.W.2d 641, 644 (Mo.App.1971); *St. ex rel State Hwy. Commission v. Wally Hutter Oil Co.,* 467 S.W.2d 279, 282 (Mo.App.1971).

A presumption of a lack of intent to permanently annex an article to realty is created when removal of the chattel can be done without "material injury to the freehold." 35 Am.Jur.2d, supra at pp. 727, 730; *In re Estate of Horton,* supra at 795. "The presumption is that the tenant, by annexing fixtures, did so for his own benefit and not to enrich the freehold." 35 Am.Jur.2d, supra at 729. Case law appears to support the view that the extent of the furnishings necessary for the operation of a modern business "negates any intention ... to make any gift to the landlord and that therefore all ordinary store fixtures, including showcases and shelving, business signs, and miscellaneous other appliances installed by (the tenant) may be considered to remain his personal property," unless "substantial damage" would be the result of removal. 35 Am.Jur.2d, supra at 776. See *O'Donal v. Aurentz,* 210 Mo.App. 641, 235 S.W. 826 (1922), (light fixtures bought by defendant, fastened to the ceiling in the usual way and not in a peculiar or special manner, and connected to the building wiring will not be deemed fixtures); *Loan v. Gregg,* 55 Mo.App. 581 (Mo.App.1893), (a mirror, not built into the wall, removal of which would not injure the building, deemed personalty); *Marsh v. Spradling,* supra (carpeting is not usually affixed with the intention to make it a permanent part of the house in which it is installed).

On the basis of the evidence, the Court finds that the items removed were purchased by debtor and installed to meet the particular needs of her business in the demised premises. There is no evidence that she intended that any of the items become fixtures or that they were attached in such a way as to become fixtures. There is further no evidence that removal caused substantial damage. Such marks that were left would be covered by ordinary renovation for a new tenant.

Under Missouri law, there are three elements to be considered in determining whether an item is a fixture. These are "annexation to the realty, adaption to the use to which the realty is devoted, and intent of the annexor that the object become a permanent accession to the freehold. Missouri cases are uniform in requiring each of these elements to be present in some degree, however slight, before an item may be considered a fixture." *Sears, Roebuck & Co. v. Seven Palms Motor Inn,* 530 S.W.2d 695-96-97 (Mo.1975). There is no evidence of annexor's intent to make any of these items a permanent accession to the premises.

The lease provision, Art. VIII, § 8.1(L), dealing with fixtures, begs the question. It refers to items "permanently affixed to the Leased Premises. There is no evidence that any of these items were permanently affixed. Compare *Marsh v. Spradling,* 537 S.W.2d 402 (Mo.1976), where cabinets were designed especially for houses and installed before the rooms were finished.

The Complaint for Reclamation is DENIED.

This Order constitutes Findings of Fact and Conclusions of Law as required by Rule 752, Rules of Bankruptcy Procedure.

SO ORDERED this 15th day of December, 1982.